IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| RICKY SMITH, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| | * | |
| vs. | * | No. 4:10-cv-01557-SWW |
| | * | |
| | * | |
| | * | |
| | * | |
| ARKANSAS HIGHWAY POLICE, a | * | |
| division of the ARKANSAS STATE | * | |
| HIGHWAY AND TRANSPORTATION | * | |
| DIVISION, a public body corporate; and | * | |
| RONNIE BURKS, individually and as | * | |
| Chief of the Arkansas Highway Police, | * | |
| | * | |
| Defendants. | * | |

## OPINION AND ORDER

Plaintiff Ricky Smith brings this employment discrimination action on the basis of race (black) and retaliation pursuant to Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981, and 42 U.S.C. § 1983, alleging that his employer, the Arkansas Highway Police (AHP), a division of the Arkansas State Highway and Transportation Division (AHTD), and Ronnie Burks, individually and as Chief of the AHP (Chief Burks), denied him a fair and equal opportunity to be promoted to the position of sergeant and retaliated against him for opposing alleged discriminatory conduct. The matter is before the Court on motion of defendants for summary judgment [doc.#24]. Smith has responded in opposition to defendants' motion and defendants have filed a reply to Smith's response. For the reasons that follow, the Court grants defendants' motion for summary judgment.

I.

The AHP is a state law enforcement agency responsible for enforcement of transportation and safety related laws. The AHP is a division of the AHTD and was under the authority of the Director of the AHTD, Dan Flowers (Director Flowers), during the relevant time period. AHP Chief Burks reported directly to Director Flowers, and below Chief Burks was Major Paul Claunch.[1]

The AHP is comprised of approximately 180 personnel, the majority of whom are uniformed officers. AHP employees are subject to the policies and procedures set forth in the AHTD Personnel Manual plus all AHP policy directives or administrative orders specific to the division.

Smith was hired by the AHP as a patrol officer in May 2001 and was promoted to the rank of Patrol Officer First class on June 12, 2002. Smith works at the Riverside Station in District Five, West Memphis, Arkansas. Sergeant Billy Brown was Smith's supervising officer during the events giving rise to this action. Smith was also employed at Mid-South Community College (Mid-South) with prior approval from Chief Burks.

AHP's Personnel Manual provides information for employees and supervisors on AHP policies and procedures. The AHP Personnel Manual includes an EEO Policy which prohibits discrimination and harassment by or against any AHP employee. Additionally, the AHP Personnel Manual contains an Electronic Information Systems Policy outlining employees' use of AHP computers and the protection and security of sensitive AHP network information.

As a result of a Department of Labor audit, AHP instituted policies and procedures regarding officer "off-the-clock" work (undocumented hours worked before and after an

---

[1] Unless indicated otherwise, the background facts as set forth in this Opinion and Order are undisputed. See Pl.'s Resp. to Def.'s St. of Undisp. Facts [doc.#29].

employee's scheduled shift). Policy Directive 06-04-069 prohibits AHP non-exempt employees from performing work-related activities before or after their scheduled shift. It also requires that non-exempt employees accurately and completely record all work time in a daily time log (DTR). Additionally, non-exempt employees are prohibited from using AHP property before or after their regularly scheduled work hours without authorization from their supervisor.

On February 3, 2009, Smith overheard a telephone conversation between Sergeant Brown and another officer, Officer Morris (first name not supplied), who is white, about taking time off and other leave issues. Smith was not on the telephone call and only heard Sergeant Brown's end of the conversation with Officer Morris granting Officer Morris time off. Smith thought Sergeant Brown's conversation with Officer Morris was "unfair" because on a separate occasion Sargent Brown "went off" on Smith when Smith requested to take time off less than three hours before his scheduled shift was to start.

Smith prepared a memo after work hours about the alleged unfair leave issues and then went to Mid-South. In an attempt to print his memo, Smith allowed another Mid-South employee unauthorized access to his AHP issued computer. Smith's AHP computer crashed as a result of the unauthorized security access at Mid-South and he was unable to print the memo. Several log-in credentials were observed on Smith's AHP computer by AHTD's information technology department, including the Mid-South employees Smith had allowed to access his computer. Smith reported the computer crash to Lieutenant Scott Fraley, an officer in his chain of command and who characterized Smith's job performance under him as "decent."

Smith told Lieutenant Fraley that he was trying to print a memo about Sergeant Brown at the time of the computer crash and Lieutenant Fraley asked Smith to prepare a memo about the

computer problems at Mid-South.  Defendants state that Lieutenant Fraley also requested that Smith provide him with the memo about the alleged unfair leave issues with Sergeant Brown but that Smith could not retrieve the memo from his damaged AHP computer.  Smith denies this but does not set forth a basis for his denial.  In any case, Lieutenant Fraley retyped Smith's memo regarding leave using a copy provided by Smith, and Smith sat there while Lieutenant Fraley retyped his memo.  Smith signed the memo after Lieutenant Fraley retyped it.  Defendants state that Smith agreed the memo was "correct" but Smith denies this, stating in his deposition that he used the word "mistreatment" when Lieutenant Fraley typed "unfair treatment."  Smith acknowledged, however, that he signed the memo and he stated that "I think it's – I'm going to say its correct."  Smith's memo as typed by Lieutenant Fraley did not use the words "race" or "discrimination."  It did, however, reference "unfair treatment," and Smith states in his deposition in response to a question noting that there's nothing in the memo that addresses race discrimination that "I was trying to say race, but I didn't say race as in black."  Smith states that in the memo, he compared his treatment by Sergeant Brown to the more favorable treatment of Officer Morris, and he states that Lieutenant Fraley should have known that he was referring to racial discrimination because of a conversation they had on February 6, 2009, after Lieutenant Fraley had typed the memo, when he told Lieutenant Fraley, "I don't think Sergeant Brown likes the brothers."

Defendants state that Smith's "off-the-clock" work violated Policy Directive 06-04-069 and that his unauthorized use of his AHP computer violated the Electronic Information Systems Policy set forth in Administrative Order No. 2002-04.  Smith chose to have an administrative hearing after receiving notice of the policy violations and possible disciplinary action.

At his administrative hearing on April 8, 2009, Smith admitted to violations of Policy Directive 06-04-069 and Administrative Order 2002-04 and he acknowledged that the violations were serious. Smith did not mention race discrimination or the contents of his memo regarding Sergeant Brown at the administrative hearing. Smith was suspended one day without pay for violating Policy Directive 06-04-069 and Administrative Order 2002-04. Sergeant Brown was not involved in this disciplinary action.

On April 15, 2009, Smith contacted Lieutenant Fraley to inquire about the status of his memo regarding the leave issues with Sergeant Brown. On April 20, 2009, Smith met Lieutenant Fraley and Assistant District Commander, Lieutenant James Speer, at the Riverside Station to discuss the memo about Sergeant Brown. At that meeting, Smith told the lieutenants that Sergeant Brown had "bad conduct" and that all Smith wanted was to be "treated fairly." Smith did not use the term "race discrimination" at the meeting with Lieutenants Fraley and Speer. Smith also met with District Captain Jeff Holmes (Captain Holmes) separately on April 27, 2009, to discuss his memo regarding Sergeant Brown and the request for leave.

On May 1, 2009, AHP announced that it was seeking to fill eleven vacant sergeant positions, including four sergeant positions at Crittenden County Weigh Stations. The application deadline for the vacant positions was May 15, 2009.

Smith was not eligible to apply for the vacant sergeant positions because of his disciplinary action for his violations of Policy Directive 06-04-069 and Administrative Order 2002-04. After further investigation into Smith's memo about Sergeant Brown, Chief Burks, by letter dated June 26, 2009, rescinded Smith's disciplinary action, and a verbal warning was given in lieu of suspension. Smith admits that the disciplinary one-day leave without pay was

rescinded and that he received a verbal warning for violations of Policy Directive 06-04-069 and Administrative Order 2002-04. He states, however, that certain emails show that Chief Burks took such action at the behest of ATHD legal counsel to avoid a failure-to-promote claim.

Defendants state that Sergeant Brown was transferred to another station and required to attend an interpersonal communication training seminar as a result of Smith's memo. Smith denies this but does not set forth a basis for his disagreement. In his deposition, Smith states that Lieutenant Speer told him that Sergeant Brown "would be changed to another shift and he would go to a supervisor school or something."

Since Chief Burks approved rescinding Smith's disciplinary action, Smith was allowed to apply for the vacant sergeant positions. Defendants state that the application deadline was specifically extended for Smith until July 9, 2009. Smith denies that the application deadline was specifically extended for him.

On June 30, 2009, Smith submitted his application for consideration of one of four vacant sergeant positions at Crittenden County Weigh Stations. AHP accepted Smith's application, and on July 31, 2009, Smith received notice of his scheduled interview before an interview panel.

According to AHP policy, candidate selections are based on the recommendation of an interview panel comprised of the AHP Chief or his/her designee; the division head of human resources or his/her designee; and the district commander for the vacant position. All interviews are videotaped. The interview panel members for the selection of the sergeant position for which Smith applied were Ken Jordan (Section Head, Training and Safety, Human Resources, AHTD) (black male), Captain Holmes (District Commander) (white male), and Major Claunch (Chief's Representative) (white male).

The candidates receive scores based on their rank (10%); service/seniority status (10%); CLEST certifications (10%); education (20%); interview exam (40%); and administrative review (10%).[2] The interview exam consists of twenty oral questions and preparation of a written memorandum related to laws and regulations as well as AHTD and AHP policies and procedures (which had been approved by AHP's legal department) that were all job related. Defendants state that the purpose of AHP's selection process and scoring criteria is to select candidates with the strengths identified for the available position. Smith denies this but does not set forth a basis for his denial.

The same twenty questions are read aloud (and available in writing) for each applicant. Major Claunch, as Chief Burks's designee, was the only one to ask the applicants questions. The panelists wrote the interviewees' responses separately on their questionnaires.

The panelists reviewed the videos at a later date and defendants state that no scores were changed. Smith denies this, stating that the panel did change scores. Smith cites the deposition testimony of Major Claunch for this assertion, who stated in relevant part as follows:

> Q. Were the written responses that you wrote down on your questionnaires did you write them down at the same time that the interviews were given?
>
> A. Yes, sir.
>
> Q. Okay.
>
> A. Or made checkmarks or whatever.
>
> Q. All right. Did you make changes to the written responses after you reviewed the videos?

---

[2] The administrative percentage (10%) is based on supervisor recommendations, personnel file review, candidate's appearance/demeanor during the interview, and the candidate's other AHP duties.

A. In certain cases we may have; yes, sir.

Q. So you'd go back and make changes to what the responses were?

A. If, if if they were warranted; yes, sir.

Q. So is there any way looking at the, your responses ah, your questionnaires to tell when or if changes were made after reviewing the videos?

A. Probably not as we've used these pieces of paper as worksheets basically so –[3]

The panelists all participated in the grading after reaching a consensus. After totaling candidate scores in all evaluation areas, the interview panel recommended candidates with the highest overall scores in a memo for approval by Chief Burks and Director Flowers. Defendants state that the panelists did not know the candidates' scores in the other areas before the oral interview. Smith denies this, stating that the interview panel reviewed the personnel files of the applicants before interviewing them.

On October 23, 2009, the interview panel recommended the candidates for the sergeant positions at the Crittenden County Weigh Stations who had the highest overall scores: John Doe # 1 (white male, 49.171); John Doe # 2 (black male, 41.636); John Doe # 3 (white male, 40.121); and John Doe # 4 (white male, 37.368).[4] John Doe # 2, a black male, had the second highest

---

[3] Smith provides only page 28 of Major Claunch's deposition, which does not reveal the full context of the questioning on this topic, and which does not provide the full concluding answer on that page. It is not clear that Major Claunch is suggesting that specific scores were changed. Rather, it appears that he was stating that the written responses given by the applicants were in some cases changed, "if they were warranted," to reflect that which was revealed by the videos when they were later viewed. In this respect, Captain Holmes stated in response to the question, "Why did you go ahead and review the tape if you'd already taken notes?," that the videos were reviewed "Just to insure accuracy." When asked why he tried to reconcile his scores, he stated "We watched, scored individually and then watched the video to verify all, we all had what we saw and that it was scored based on that." Although any changes following the viewing of the videos may have affected final scores, this arguably could in some cases result in improved scores rather than just the lowering of scores. In any case, Smith provides no evidence or allegation, even, that his score was changed, and he provides no evidence that the scores of any of his fellow applicants were changed.

[4] The parties have produced under seal the names of the applicants but have redacted their names in the public filings.

overall score and was included in the interview panel's recommendation. Smith's overall score was 27.304.

Defendants state that the interview panel's report was approved by Chief Burks and sent to Director Flowers for approval on October 25, 2009. Smith denies this but does not set forth a basis for his denial other than claiming that defendants "failed to provide any writing to support this allegation."

By letter dated April 16, 2010, Smith was informed by Chief Burks that "another qualified applicant has been selected for the Sergeant position for which you applied." Defendants state that the list of successful candidates was announced on April 19, 2010, after AHP received approval of the recommendations from Director Flowers. Smith denies this but does not set forth a basis for his denial. In any case, Smith states that defendants selected a less-qualified white male–John Doe # 3–for the position for which he applied, even though Smith states he had greater seniority and experience, having been employed as an officer with AHP more than three years longer than the successful applicant.

On July 31, 2010, Smith filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) in which he stated as follows:

> I was hired on May 17, 2001. On Jul[y] 26, 2009, I interviewed for the position of Sergeant. On April 16, 2010, I received an e-mail stating I was not selected for the position of Sergeant.
>
> I was not given a reason as to why I was not offered the position.
>
> I believe I was not offered the position because of my race, black, in violation of Title VII of the Civil Rights Act of 1964, as amended, and retaliation.[5]

---

[5] The retaliation box on Smith's EEOC charge is not checked but there is no dispute that Smith is asserting a retaliation claim.

The EEOC subsequently issued Smith a right-to-sue letter after which Smith filed this action.

II.

Defendants move for summary judgment on the following grounds: (1) Smith cannot establish race discrimination against AHP under Title VII or against AHP or Chief Burks in his official capacity under 42 U.S.C. § 1983; (2) Smith cannot establish retaliation against AHP under Title VII or against AHP or Chief Burks in his official capacity under § 1983; and (3) Smith's claims against Chief Burks in his individual capacity under §§ 1981 and 1983 are barred by the doctrine of qualified immunity. Defendants argue there are no genuine issues of material fact with respect to any of these issues and that they are entitled to summary judgment as a matter of law.

A.

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] ... which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has properly supported its motion for summary judgment, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). The nonmoving party must respond by submitting evidentiary materials that set out "'specific facts showing ... a

genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56(e)). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita,* 475 U.S. at 587 (citations omitted). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citation and quotation marks omitted). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587 (citation omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*[6]

B.

As an initial matter, the Court notes that in his response to defendants' motion for summary judgment, Smith does not address defendants' argument that he cannot establish a claim of discrimination as to the disciplinary action imposed by AHP for policy violations. Accordingly, to the extent Smith is pursuing such a claim apart from his failure-to-promote and retaliation claims, he has waived that argument. See *Satcher v. University of Arkansas at Pine Bluff Bd. of Trustees*, 558 F.3d 731, 735 (8th Cir. 2009) (a "failure to oppose a basis for summary judgment constitutes a waiver of that argument"). The Court now turns to those grounds for

---

[6] "There is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc). "Because summary judgment is not disfavored and is designed for 'every action,' panel statements to the contrary are unauthorized and should not be followed." *Id.*

summary judgment that are contested.[7]

## C.

### 1.

Addressing first Smith's failure-to promote claim, a plaintiff may survive summary judgment either by direct evidence of discrimination, or by creating an inference of discrimination under the burden-shifting test in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-03 (1973), and then rebutting any proffered nondiscriminatory rationale for the employment decision with sufficient evidence of pretext. *Wimbley v. Cashion*, 588 F.3d 959, 961 (8th Cir. 2009) (citation omitted).[8] The parties have addressed Smith's failure-to-promote claim under the *McDonnell Douglas* framework and this Court will do the same. Smith thus has the initial burden to establish a prima facie case of discrimination. *Id.* To establish a prima facie case of race discrimination in a failure-to-promote claim, Smith must show: (1) he is a member of a protected group; (2) he was qualified and applied for a promotion to an available position; (3) he was rejected; and (4) similarly situated employees, not part of the protected group, were promoted instead. *Jackson v. United Parcel Service, Inc*., 643 F.3d 1081, 1086 (8th Cir. 2011). If he establishes a prima facie case, then the burden shifts to AHP to articulate a legitimate, non-discriminatory rationale for its action. *Id.* If AHP articulates such a rationale, the burden returns

---

[7] In their respective factual backgrounds, the parties set forth, *inter alia*, alleged facts concerning disparate treatment that Smith is alleging, *i.e.*, that white officers routinely complete a DTR to reflect accurate work hours, but he was not given this opportunity, that Policy Directive 06-04-069 is routinely violated "by almost the entire Highway police," including supervisors, and that the one example of a white officer being disciplined for computer policy violations involved the viewing of pornography and, thus, was more "egregious." In his response to defendants' motion for summary judgment, Smith does not address these allegations of disparate treatment in the argument portion of his response and the Court accordingly will not address these allegations but only addresses the arguments raised by defendants to which Smith has responded.

[8] The Eighth Circuit analyzes Title VII, § 1981, and § 1983 claims under the same framework. *Humphries v. Pulaski County Special Sch. Dist.*, 580 F.3d 688, 692 n.3 (8th Cir. 2009).

to Smith to prove that the proffered rationale was merely a pretext for discrimination. *Id*.

Defendants argue that even assuming Smith can establish a prima facie claim for discriminatory failure to promote, he was not the most qualified applicant for the position for which he applied and AHP's selection of a more qualified applicant with a higher overall score is a legitimate, nondiscriminatory reason for its decision not to promote Smith. Smith does not dispute that he received the lowest score out of all of the other applicants on the exam interview. Rather, Smith argues that he had greater seniority and experience (three years worth) than the individual selected for the position–John Doe #3–and that "[f]or this reason," he was "more qualified to be sergeant."

The Court finds that AHP's decision to offer the sergeant position to which Smith applied to the applicant that received a higher overall score on the exam interview constitutes a legitimate, non-discriminatory reason for not offering the position to Smith. See *Sutherland v. Michigan Dept. of Treasury*, 344 F.3d 603, 616 (6th Cir. 2003) (finding plaintiff's lower interview score a legitimate, non-discriminatory reason for denial of promotion). There is no evidence that AHP unfairly applied its promotional policy to Smith, and the fact that Smith may have worked at AHP longer than the applicant chosen for the position "does not negate the Defendants' legitimate, non-discriminatory reason for their employment decision." See *id*. Smith simply has offered no evidence to rebut AHP's legitimate, non-discriminatory reason for not promoting him.[9]

2.

---

[9] The Court notes that the applicant who received the second highest overall score–John Doe # 2–is black and received a promotion.

The Court next addresses defendants' argument that Smith cannot establish retaliation against AHP under Title VII or against AHP or Chief Burks in his official capacity under § 1983. The Court notes that there is an initial question as to whether Smith may properly bring a § 1983 retaliation claim as courts have recognized that employment discrimination claims based on theories of unlawful retaliation–claims which owe their existence to Title VII and are not recognized under general constitutional principles–may not be pursued via § 1983. See, *e.g.*, *Hargrave v. County of Atlantic*, 262 F.Supp.2d 393, 441 (D.N.J. 2003). Cf. *Foster v. Wyrick*, 823 F.2d 218, 221 (8th Cir. 1987 (a plaintiff "may not circumvent Title VII's filing requirement by utilizing § 1983 as a vehicle for asserting his Title VII claim"). Smith however, argues that his retaliation claim is based on his having opposed discriminatory conduct by way of his February 2009 memo that was typed by Lieutenant Fraley and thus has an independent constitutional basis, namely the First Amendment. See *Tyler v. University of Arkansas Board of Trustees*, 628 F.3d 980, 986 (8th Cir. 2011) (noting that although retaliation claims under Title VII may not be the basis for a retaliation claim in a § 1983 action, § 1983 provides a vehicle for redressing claims of retaliation on the basis of the First Amendment, such claims being analyzed under the same framework as claims of retaliation under Title VII). Defendants argue that Smith's § 1983 retaliation claim is really just a Title VII claim based on a failure to promote in disguise and that it is thus preempted under Title VII. But even if Smith's § 1983 retaliation claim is not preempted under Title VII, he fails to meet all the necessary elements of a prima facie retaliation claim, whether under Title VII or § 1983.

To state a prima facie case of retaliation, an employee must show that he engaged in protected activity, he suffered a materially adverse action that would deter a reasonable

employee from making a charge of employment discrimination, and there is a causal connection between the protected activity and the adverse action. *Barber v. CI Truck Driver Training, LLC*, 656 F.3d 782, 801-802 (8th Cir. 2011) (internal quotation marks and citation omitted). Where an employee successfully states a prima facie case, the burden shifts to the employer to proffer a legitimate, non-retaliatory reason for its action. *Id.* at 802. Then, the burden shifts back to the employee to present evidence that raises a genuine issue of material fact as to whether the defendant's proffered reason is pretextual. *Id.*

On its face, Smith's memo as typed by Lieutenant Fraley, which Smith signed and at one point stated was "correct," appears to be nothing more than a complaint about a personal conflict between co-workers and not opposition to discriminatory conduct, *i.e.*, protected activity. Smith's memo did not use the words "race" or "discrimination" but only referenced "unfair treatment," an ambiguous reference which does not necessarily mean race. Smith states he "was trying to say race" but he acknowledges he "didn't say race as in black." Smith also states Lieutenant Fraley should have known that he was referring to racial discrimination because of a conversation they had after Lieutenant Fraley had typed the memo when he told Lieutenant Fraley, "I don't think Sergeant Brown likes the brothers," but this is pure speculation and does not demonstrate that defendants had reason to know that his complaint about Sergeant Brown was related to race discrimination. AHP's Personnel Manual contains an EEO Policy, which prohibits discrimination and harassment by or against any AHP employee and includes a discrimination complaint procedure, and Smith acknowledged that he never filed any internal EEO complaints about Sergeant Brown.

Even if Smith's memo as typed by Lieutenant Fraley constitutes statutorily protected

activity, Smith has not shown a causal connection between his February 2009 memo and the October 2009 approval of the interview panel recommendations of other applicants given that more than eight months passed between Smith's memo and the approval of the interview panel recommendations.  See *Farcello v. County of Ramsey*, 612 F.3d 1069, 1081 (8th Cir. 2010) (four month interval "significantly weakens any causal relationship").  Smith, however, states he does not rely solely on temporal proximity to establish a causal connection but points to an email with the subject "Lawsuit Avoidance Rule #1 - Reject Troublemakers Up Front" that was sent by the head of Human Resources at AHTD and which he states evidences her hostility to employees who exercise their legal rights.  This email, which had an attached an article giving pointers for identifying potential troublemakers in the interview process and, according to defendants, was taken from a daily HR website used as a resource for the division and supervisors (along with other similar sites), was forwarded by Chief Burks and he "believe[d] it's good guidance."  Smith claims this email shows that "[Chief] Burks had a retaliatory motive towards [Smith]" but Smith's argument is misplaced as this email was sent on August 8, 2011, well over two years after Lieutenant Fraley typed Smith's memo complaining about Sergeant Brown and nearly two years after the October 2009 approval of the interview panel recommendations of other applicants.  This email thus does not support a causal relationship between Smith's memo and the approval of the interview panel recommendations of other applicants.

Even had Smith established a prima face case of retaliation, AHP's decision to offer the vacant sergeant position to which Smith applied to the applicant that received a higher overall score on the exam interview constitutes a legitimate, non-discriminatory reason for not offering the position to Smith, see *Sutherland*, 344 F.3d at 616, and Smith has not shown that this

proffered reason is pretextual.

3.

Finally, the Court addresses defendants' argument that Smith's claims against Chief Burks in his individual capacity under §§ 1981 and 1983 are barred by the doctrine of qualified immunity.[10] A state official sued in his individual capacity is entitled to qualified immunity so long as his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Mathers v. Wright*, 636 F.3d 396, 399 (8th Cir. 2011) (citing *Harlow v. Fitzgerald,* 457 U.S. 800 (1982)). "A right is clearly established when 'the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id*. (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

There is no evidence that Chief Burks knew or had reason to know that Smith's complaint about Sergeant Brown was related to race discrimination and Chief Burks reversed the discipline that was initially imposed on Smith and allowed Smith compete for the available sergeant positions. Smith claims that Chief Burks was "pressured by AHTD's legal counsel" to reverse his discipline and that Chief Burks designated Major Claunch to serve as his representative on the interview panel "even though [Major] Claunch knew about [Smith's] complaint of racial discrimination and the backlash [Chief ] Burks experienced from his harsh discipline of [Smith]." These claims, however, are speculative and draw inferences that are not legitimately supported by the record. Unsupported and conclusory allegations cannot defeat summary judgment and the Court finds that the record is simply devoid of evidence showing that

---

[10] A claim against a state actor under § 1981 must be asserted through § 1983. *Artis v. Francis Howell N. Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1181 (8th Cir. 1998).

Chief Burks engaged in conduct that violated or intended to violate a statutory or constitutional right of Smith.  Accordingly, Chief Burks is entitled to qualified immunity in his individual capacity.

III.

For the foregoing reasons, the Court grants defendants' motion for summary judgment [doc.#24].  Judgment will be entered accordingly.

IT IS SO ORDERED this 13th day of March 2012.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE